**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

```
_____
                              :
UNITED STATES OF AMERICA      :
                              :    Crim. No. 07-00154 (NLH)
      v.                      :
                              :
PEDRO VAZQUEZ,                :    OPINION
                              :
            Defendant         :
_____:
```

**APPEARANCES**:

JULIE A. MCGRAIN
FEDERAL PUBLIC DEFENDER'S OFFICE
800-840 COOPER STREET
SUITE 350
CAMDEN, NJ 08102

    *Counsel for Pedro Vazquez*

DANIEL AARON FRIEDMAN
OFFICE OF THE U.S. ATTORNEY
DISTRICT OF NEW JERSEY
CAMDEN FEDERAL BUILDING U.S. COURTHOUSE
P.O. BOX 2098
401 MARKET STREET, 4TH FLOOR
CAMDEN, NJ 08101

    *Counsel for the United States*

**Hillman**, **District Judge**

    Before the Court are Pedro Vazquez's ("Defendant") Motions

for Reduction of Sentence under the First Step Act, 18 U.S.C. §

3582(c)(1)(A).  (ECF 228, 233).  For the reasons expressed
below, Defendant's Motions will be denied.

**Background**

On December 14, 2007 a jury found Defendant guilty of
conspiracy to distribute and possess with intent to distribute 5
kilograms or more of cocaine (powder) and 50 grams or more of
cocaine base (crack), in violation of 21 U.S.C. § 846, contrary
to 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and distribution and
possession with intent to distribute 50 grams or more of cocaine
base (crack), in violation of 21 U.S.C. §§ 841(a)(1) and
(b)(1)(A).  In addition, under 21 U.S.C. § 851(a), Defendant was
subject to an enhanced penalty information because of two prior
state drug convictions.  On September 15, 2008, the undersigned
sentenced Defendant to a term of imprisonment of 360 months and
a 10-year term of supervised release.  (ECF 150).

Subsequently, Defendant filed a petition under 28 U.S.C. §
2255 arguing that he received ineffective assistance of counsel
in that counsel did not challenge his career offender status.
The Court denied the petition, but the Third Circuit reversed
and remanded the matter for resentencing.  On remand, this Court
once again determined that the Defendant was a career offender
under the Guidelines, albeit based on different predicate
offenses as the original sentence, and further determined the

advisory guidelines remained the same as those at the original sentence – 360 months to life.[1]

However, the outcome of the resentencing on March 15, 2018 was very different than the first time.  After reconsidering the 18 U.S.C. § 3553 factors, including among other things the Defendant' strong family support, his then lack of a prison disciplinary record, and substantial rehabilitation efforts while incarcerated such as sustained and skilled vocational training, the Court granted a joint motion for a variance. After varying downward four levels to a level 33, this Court resentenced the Defendant, despite his career offender status and the sheer volume of drugs trafficked by the sophisticated organization to which he belonged, to the mandatory minimum sentence of 240 months, a downward variance of 120 months or 10 years below the bottom of the advisory range.  (ECF 224 at 32).

Defendant originally moved before this Court for compassionate release in a pro se motion filed on May 26, 2020 (the "First Motion").  (ECF 228).  A follow-up counseled motion (the "Counseled Motion") was filed on December 2, 2020.  (ECF

---

[1] The Court calculated the Defendant's total offense level to be 37, one level below the original level of 38.  Because of the career offender provision, the criminal history category remained a Category VI.  With only a one point difference and how high in Zone D Defendant was, the advisory range remained the same.

233).  The Government filed a letter brief in opposition to the Motions on January 4, 2021 (the "Opposition").  (ECF 236). Defendant filed a reply brief on January 15, 2021 (the "Reply"). (ECF 238).  Although represented by counsel, the Defendant filed two additional letters on January 18, 2022 and May 27, 2022 seeking the status of his motion and providing additional information regarding the COVID-19 situation at the facility where he is housed.  (ECF 247 and 250).

Defendant contends that he has exhausted his administrative remedies (ECF 233 at 3), which the Government does not contest (ECF 236 at 9).[2]

**Legal Standard**

"The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons.'"  United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(C)(1)(A)(i)).  Before bringing a motion for reduced sentence on their own behalf, defendants first "must ask the Bureau of Prisons to do so on their behalf, give the BOP thirty days to respond, and exhaust any available administrative appeals." Id.  "Thus, under the First Step Act, a

---

[2] The Government notes that the Bureau of Prisons (the "BOP") has no record of Defendant's request for compassionate release. (ECF 236 at 9).  However, the Government accepts Defendant's counsel's representation that Defendant did apply for compassionate release based on a copy of the purported request that Defendant submitted with his Counseled Motion.  (Id.)

defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." United States v. Sellers, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020) (citing 18 U.S.C. § 3582(C)(1)(A)); see also Raia, 954 F.3d at 595.

At this second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3852(c)(1)(A) if after finding extraordinary and compelling reasons warrant a reduction, that such a reduction would be consistent with applicable policy statements issued by the Sentencing Commission and that the applicable sentencing factors under § 3553(a) warrant a reduction.  United States v. Pabon, 458 F. Supp. 3d 296, 300 (E.D. Pa. 2020).

**Discussion**

## 1. **Defendant has satisfied the exhaustion requirements**

Defendant has fully exhausted his administrative rights in this case after applying to the warden of FCI Fort Dix on October 26, 2020.  (ECF 233 at 3).  Defendant never received a response from the warden.  (Id.)  The Government agrees that Defendant has exhausted his administrative remedies (ECF 236 at 9), as required by the statute.

2. **Defendant fails to establish "extraordinary and compelling"
   reasons for his release**

Defendant argues that his pre-existing medical conditions
place him at a high risk for complications from COVID-19.
Specifically, Defendant argues that he is at an increased risk
for severe illness and death if he contracts COVID-19 due to his
underlying health conditions.  (ECF 233 at 7).   According to
his Counseled Motion, he suffers from hypertension, obesity, a
history of smoking and a lung injury from a stabbing in 2001.
(Id.)

Defendant argues the ongoing COVID-19 pandemic, his pre-
existing medical conditions, and the conditions of his
confinement together constitute extraordinary and compelling
reasons sufficient to reduce his prison sentence.  (Id.)
Defendant points to studies that indicate that hypertension,
obesity, and smoking are correlated with worse outcomes for
individuals who contract COVID-19 compared to those who do not
have such underlying conditions. (Id. at 8-11).  Defendant also
argues that he is at a higher risk for negative outcomes if he
contracts COVID-19 because he is Hispanic.  (Id. at 11).
Defendant argues that his age, 48 at the time of this Opinion,
puts him at a higher risk of severe disease or death if he
contracts COVID-19.  (Id. at 7).  Defendant also argues that the
rate of infections in prison is much higher than that in the

general population, putting him at increased risk of infection. (Id. at 12).

The Court does not find that Defendant presents "extraordinary and compelling" reasons for his release.[3]  The Court takes seriously Defendant's concerns about the effect of COVID-19 would have on his health and conducts its analysis on whether he has shown "extraordinary and compelling reasons for his release" accordingly.  That said, the Court holds that Defendant has not met that standard.  First, the Court finds instructive, although not determinative,[4] the current guidance by

---

[3] The Government concedes that Defendant has presented "extraordinary and compelling" reasons for his release because of his obesity.  (ECF 236 at 10-11).  As further explained below, the Court finds this position to be inconsistent with other courts that have held that conditions similar to those of Defendant did not meet the standard under 18 U.S.C. § 3852(c)(1)(A) or the guidance under U.S.S.G. § 1B1.13, cmt. n.1(A).  See United States v. Brashear, 2021 WL 5239119, at *3 (D.N.J. Nov. 10, 2021) ("Despite the risk of COVID-19, multiple decisions in the Third Circuit, and multiple decisions in this District, have denied compassionate release to inmates suffering from obesity, hypertension, and/or other health issues.").  However, as set forth below, even if the Court were to agree with the Government and find that Defendant meets this threshold standard, a full consideration of the § 3553 factors do not warrant the relief sought.

[4] While the Court looks to § 1B1.13 as directed to by the statute, it is not, standing alone, a determinative factor in light of a lack of quorum which has prevented the Sentencing Commission from updating § 1B1.13 in response to the First Step Act.  That said, the Third Circuit has approved a district court's consideration of § 1B1.13 when it comes to evaluating motions for compassionate release filed by prisoners.  United States v. Andrews, 12 F.4th 255, 260 (3d Cir. 2021), cert. denied, No. 21-1208, 2022 WL 994375 (U.S. Apr. 4, 2022) ("The

the Sentencing Commission as incorporated by § 3582(c).
Defendant's medical conditions, while chronic, are not of the
sort that militate toward release under § 3582(c)(1)(A).

The applicable guidance from the Sentencing Commission
falls under Comment 1 under § 1B1.13 of the guidelines.
U.S.S.G. § 1B1.13, cmt. n.1(A).  While the Court agrees that
Defendant's medical conditions are chronic, it cannot say that
they fall into the same categories as "metastatic solid-tumor
cancer, amyotrophic lateral sclerosis (ALS), end-stage organ
disease, and advanced dementia[,]" examples offered by the
Sentencing Commission of the types of illnesses that might
constitute "extraordinary and compelling circumstances."  Id.

It also cannot say that Defendant's conditions
substantially "diminish[] the ability of [Defendant] to provide
self-care within the environment of a correctional facility and
from which he...is not expected to recover." Id.  Defendant has
not shown that he cannot care for himself.  Defendant has not

---

court correctly recognized that although the policy statement is
no longer binding, it still sheds light on the meaning of
extraordinary and compelling reasons.").  Even if the Court were
to assume that a revised § 1B1.13 would expand the breadth of
medical situations warranting release, the result here would not
be different.  As set forth in more detail in this Opinion, the
Defendant fails to demonstrate that his personal circumstances
and jail conditions in light of the pandemic alone, or in
tandem, represent extraordinary and compelling reasons
warranting a sentence reduction and that the applicable
sentencing factors under § 3553(a) similarly support such a
reduction.

proffered sufficient information that he is unable to manage his medical conditions in jail.  The Court accepts as logical Defendant's contention that it would be easier to curate a healthy diet and exercise regime outside of the jail environment.  But this does not mean that his obesity is caused by the fact of his incarceration or that there are no means of effective self-help and other means available from BOP to reduce or manage this condition.  That the pandemic has made this more challenging a goal is true throughout the Bureau of Prisons. The Defendant's position in this regard is not "extraordinary." See United States v. Quintana, 2021 WL 4521150, at *2 n.1 (S.D. Ind. Oct. 1, 2021) (noting that diet and exercise are not reasons for release under the First Step Act where the defendant does not explain how they are exacerbated by COVID-19).  In the absence of specific evidence showing a more heightened risk, the Court declines to find that Defendant's medical conditions, even with the possibility of contracting COVID-19, warrant his release.

Additionally, FCI Ray Brook's[5] mitigation efforts at controlling the spread of the coronavirus appear to be

---

[5] Since briefing began on Defendant's Motions, he was transferred from FCI Fort Dix to FCI Ray Brook.  FEDERAL BUREAU OF PRISONS, FIND AN INMATE, https://www.bop.gov/inmateloc/ (last visited June 1, 2022).

effective.  Currently, FCI Ray Brook has 2 active inmate and 6 active staff cases.  And Defendant is correct that this places Ray Brook in a "Red" or Level 3 status mode with substantial operational modifications.[6]  But this can be seen as evidence of a robust response to COVID-19 concerns at FCI Ray Brook and elsewhere at BOP especially in light of an uptick in cases both in and outside federal prisons.  The more telling statistic is that over the course of a pandemic that is now over two years old, no inmates or staff have died as a result of infection by COVID-19 at FCI Ray Brook while 209 current inmates have recovered from positive infections.[7]  Id.

Defendant's vaccination status is unsurprisingly unclear, given that the briefing was completed prior to the vaccines being widely available.  However, according to the BOP, 594 inmates at FCI Ray Brook have been fully vaccinated out of a population of 890.[8]  Given the well-established and accepted evidence that the available vaccines are both safe and effective, the Court believes that the vaccination rate inside FCI Ray Brook weighs against Defendant's request for relief.

---

[6] See FEDERAL BUREAU OF PRISONS, COVID-19 CORONAVIRUS COVID-19, https://www.bop.gov/coronavirus/ (last visited June 1, 2022).

[7] Id.

[8] Id.; FEDERAL BUREAU OF PRISONS, FCI RAY BROOK, https://www.bop.gov/locations/institutions/rbk/ (last visited June 1, 2022).

After a review of the record as a whole, the Court finds that Defendant, who currently seems to be managing his conditions effectively at FCI Ray Brook, does not present "extraordinary and compelling" reasons supporting his release. The effective management of his health conditions through medication and FCI Ray Brook's efforts at controlling the spread of COVID-19, taken together, undermine any finding that this Defendant presents "extraordinary and compelling reasons" for his release.

### 3. 3553(a) Factors weigh against Defendant's Favor

Even if Defendant could "establish extraordinary and compelling reasons" for his release, the Court may reduce an inmate's sentence only if the applicable sentencing factors under § 3553(a) warrant a reduction. Here, they do not.

Defendant readily admits that he committed a "serious offense." (ECF 233 at 15). However, he contends that the 14 years of his sentence that he has already served constitute sufficient punishment. (Id.) He further argues that at his age, the risk for recidivism has decreased drastically. (Id. at 16). Defendant also cites studies for the propositions that sentences over 10 years long do not do much to increase deterrence. (Id. at 17). Finally, he recounts that he has participated in numerous rehabilitative educational and

11

vocational programs that would serve him well upon his reintroduction into society.  (Id. at 18).

The Government argues that the § 3553(a) factors weigh toward denying Defendant's motion.  They note the fact that Defendant has multiple state drug trafficking convictions, and that Defendant already received a significant variance at the time that he was resentenced in 2018.   (See ECF 236 at 12). They argue that a further variance by granting Defendant's Motions would result in a sentencing disparity between Defendant and similarly situated offenders.  (Id.)  They also note that the BOP found Defendant administratively guilty of possessing a hazardous tool twice in 2020, which weighs against his release. (Id.)

The Court agrees with the Government and sees no reason to disturb the sentence it imposed in 2018.  Specifically, Defendant was involved in a serious drug trafficking conspiracy and has multiple convictions.  18 U.S.C. § 3553(a)(1).  Indeed, even as the Court reduced Defendant's sentence to the mandatory minimum in 2018, it emphasized that "the sheer volume and sophistication of this organization provided a tremendous amount of harm to the community at large." (ECF 224 at 28:17-19). Today, the crime that Defendant committed is no less serious than it was at the time of sentencing.  18 U.S.C. § 3553(a)(2)(A).  The Court accepts as a general proposition that

12

recidivism tends to decrease with age, but general deterrence of the sort of elaborate drug trafficking scheme in which Defendant was involved tips against granting Defendant's Motions. Id. at § 3553(a)(2)(B).  Moreover, the Court took Defendant's age at release into consideration at resentencing.  (ECF 224 at 30).

Further, in light of the seriousness of Defendant's crime and his two recent infractions in jail, the Court still finds that protecting the public from further crimes of Defendant also is a notable factor here.  Id. at § 3553(a)(2)(C).  Finally, given that the Court already applied a substantial downward variance far below the guidelines to a sentence of 240 months any further reduction in the length of his sentence would result in "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" Id. at § 3553(a)(6).  The advent of COVID-19 does not change the balance in Defendant's specific situation where he has not shown that he is at a materially increased risk of serious illness or death while incarcerated or that there has been a material difference in the § 3553(a) factors that animated the original sentence.

**Conclusion**

For the reasons set forth above, Defendant's Motions for Compassionate Release (ECF 228, 233) will be denied.  An accompanying Order will issue.

13

Dated: <u>June 2, 2022</u>                 <u>s/   Noel L. Hillman</u>
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.